IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**ANGELA BRASWELL ARMSTRONG**                                                              **PLAINTIFF**

v.                                    **CASE NO. 4:21-CV-1082-BSM**

**BOARD OF TRUSTEES OF**
**UNIVERSITY OF ARKANSAS**                                                                  **DEFENDANT**

## ORDER

The Board of Trustees of the University of Arkansas's ("UALR") motion for summary judgment [Doc. No. 15] is granted and Angela Armstrong's sexual harassment and retaliation claims are dismissed with prejudice.

### I. BACKGROUND

Armstrong worked as a community health coordinator for twenty hours per week from 2016 to 2018 for the University District Development Corporation (the "UDDC"), a non-profit that partners with UALR. Deposition of Armstrong at 56, 64-65, Doc. No. 18 ("Armstrong Dep. 1"); Aff. of Lee ¶ 2, Doc. No. 15-2. In 2018, she was hired by UALR's University District to work thirty hours per week. Aff. of Lee ¶ 4*;* Armstrong Dep. 1 at 75, 89. She was supervised by Barrett Allen during the five years she worked at the UDDC and the University District. Aff. of Lee ¶ 9; Armstrong Dep. 1 at 56; Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J. 4, Doc. No. 24. Armstrong is suing UALR claiming that Allen sexually harassed her during the time she worked for the UDDC and the University District. *Id.* The UDDC is an independent corporation and has not been made a party. Consequently, Armstrong's allegations against Allen while she was employed by the UDDC are not at issue

and are not considered.

In support of her sexual harassment claim against the University District, Armstrong states that, between 2018 and 2020, Allen frequently invaded her personal space by standing close to her, walking closely behind her, and coming into her office. Armstrong Dep. 1 at 111-13; Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J. 16-17. On these occasions, Armstrong would ask Allen to step back and he would do so. Armstrong Dep. 1 at 113. On another occasion, Allen walked towards her so that he could hug her, but when Armstrong raised her hands and said several times that she did not want a hug, Allen stopped and did not touch her. *Id.* at 138-39.

On two occasions, Allen made unwanted remarks about Armstrong's physical appearance. Once, he said she had "gotten thick over the holidays," *id.* at 134-35, and another time, when she was wearing high heels, he said: "Oh, you got your heels on today. You're going to show your man what you're working with." *Id.* at 133. On both occasions, Armstrong replied "Excuse me?" and Allen did not respond or make further comments. *Id.* at 133-35.

On one occasion, Allen called Armstrong into his office to tell her that she would have to take off for the remainder of the fiscal year because she had reached the maximum number of hours allotted to her position. When Armstrong asked if she could return in July 2020, Allen said "it depends." *Id.* at 143-44. Allen neither explained this comment nor did he make any suggestive comments or attempt to touch her. *Id.*

On another occasion, during the COVID pandemic, Allen participated in a video call

with Armstrong while "loung[ing]" on his bed fully clothed. *Id.* at 147-49. Allen neither explained why he was on his bed nor did he make any suggestive comments. *Id.*

On three occasions, Allen touched Armstrong. On the first occasion, he collided with her in the hallway and his hand briefly touched her waist. *Id.* at 118-21. Armstrong admits that this could have been inadvertent. *Id.* at 120. On another occasion, when the two were alone after a social event, Allen asked for a hug and walked closer for a full frontal hug. Armstrong, however, turned sideways and Allen touched her shoulder with one hand while Armstrong patted Allen on the back. This contact lasted about two seconds. *Id.* at 129-31. On the third occasion, while Allen and Armstrong were in close quarters in the office kitchen, Allen placed his hand on Armstrong's waist. This prompted Armstrong to immediately spin away and chastise Allen. *Id.* at 114, 123-25. This incident lasted a couple of seconds. *Id.* at 125.

Based on these events, Armstrong filed a Title IX complaint against Allen with UALR on July 14, 2020. Aff. of Williams, ¶ 5; Doc. No. 15-6. The complaint was resolved by informal resolution and UALR's Title IX office concluded the case on August 25, 2020. Deposition of Armstrong at 179, Doc. No. 19 ("Armstrong Dep. 2"); Aff. of Williams, ¶ 5; Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J. 8.

In support of her retaliation claim, Armstrong alleges that she was treated adversely on a number of occasions after filing the Title IX complaint. First, when Armstrong called in sick on September 8, 2020, Allen emailed her instructions for calling in sick. Armstrong Dep. 2 at 183-86. Second, on September 10, 2020, Allen notified Armstrong that she had

to return to a partially in-person work schedule, and then on October 2, he told her that she had to fully return to an in-person work schedule. *Id.* at 189. Third, Allen assigned responsibilities to Armstrong that she believed were not aligned with her position. EEOC Charge at 2, Doc. No. 15-12; Armstrong Dep. 2 at 214-18. Fourth, Allen became agitated and angry with Armstrong in meetings that took place on October 1, 2020 and November 10, 2020. Armstrong Dep. 2 at 205-08, 221-22. Fifth, on October 8, 2020, Allen requested that Armstrong leave her office door open when she was alone in the building and afterward frequently entered her office, which made her uncomfortable. *Id.* at 198-99; EEOC Charge at 2. Sixth, Allen repeatedly directed Armstrong in October 2020, to revise her work on a garden report without providing substantive feedback, which caused her to miss a deadline on another project. Armstrong Dep. 2 at 201-02, 204. Seventh, UALR's Vice Chancellor for University Affairs, Joni Lee, notified Armstrong on November 19, 2020, that her work hours would be reduced from thirty hours to twenty hours per week starting January 1, 2021. This notice was in response to Armstrong's concerns about being required to perform certain duties. Aff. of Lee, ¶ 9; Armstrong Dep. 2 at 214, 216, 219. Eighth, Armstrong was notified on November 19, 2020, that her position was being eliminated on June 30, 2021 due to UALR's budgetary constraints. Aff. of Lee ¶ 9.

On April 5, 2021, Armstrong filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), marking the boxes for retaliation and sex discrimination. EEOC Charge. The charge alleges that UALR took the actions described in the preceding paragraph against Armstrong in retaliation for reporting Allen for sexual

4

harassment. *Id.* After receiving a right-to-sue letter from the EEOC on August 16, 2021, Armstrong filed this suit against UALR alleging sexual harassment and retaliation. UALR moves for summary judgment on both claims.

## II. LEGAL STANDARD

Summary judgment is appropriate when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249–50 (1986). Once the moving party demonstrates that there is no genuine dispute of material fact, the non-moving party may not rest upon the mere allegations or denials in his pleadings. *Holden v. Hirner*, 663 F.3d 336, 340 (8th Cir. 2011). Instead, the non-moving party must produce admissible evidence demonstrating a genuine factual dispute requiring a trial. *Id.* All reasonable inferences must be drawn in a light most favorable to the nonmoving party. *Holland v. Sam's Club*, 487 F.3d 641, 643 (8th Cir. 2007). The evidence is not weighed, and no credibility determinations are made. *Jenkins v. Winter*, 540 F.3d 742, 750 (8th Cir. 2008). "[S]ummary judgment is not disfavored and is designed for 'every action' . . . including [those] alleging discrimination . . . ." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)).

## III. DISCUSSION

UALR's motion for summary judgment is granted because Armstrong's sexual harassment claim is time-barred because it was not administratively exhausted, and because she has not shown that she was subjected to retaliation for engaging in protected conduct.

A.   <u>Sexual Harassment</u>

Armstrong alleges that Allen sexually harassed her by creating a hostile work environment. UALR is moving for summary judgment because Armstrong failed to administratively exhaust this claim and because it is time-barred.

*1. Limitations Period*

Summary judgment is granted on Armstrong's sexual harassment claim because it is time-barred. This is true because a charge of discrimination must be filed within 180 days of the discriminatory acts at issue in the charge. 42 U.S.C. § 2000e-5(e)(1). Armstrong's April 5, 2021, EEOC charge is based on the same conduct that was the subject of her July 14, 2020, Title IX complaint. Consequently, it was filed approximately 265 days after the alleged sexual harassment.

*2. Exhaustion of Administrative Remedies*

UALR also argues that the charge Armstrong filed alleges a sex discrimination claim but not a sexual harassment claim. Def.'s Br. in Supp. of Mot. for Summ. J. 13, Doc. No. 16. In response, Armstrong argues that her charge was sufficient to place UALR on notice that she intended to assert a sexual harassment claim. Pl.'s Br. in Opp. to Mot. for Summ. J. 15-16. Armstrong's hostile work environment claim was not exhausted because her EEOC charge did not provide notice of her hostile work environment claim.

In the charge, Armstrong checked two boxes indicating that she was reporting discrimination based on sex and retaliation. EEOC Charge at 1. Although sexual harassment is a form of sex discrimination, *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 64

6

(1986), Armstrong's charge describes her sexual harassment as occurring before July 15, 2020, when she filed the Title IX complaint. The charge then alleges that a number of adverse employment actions were taken against her in retaliation for filing that complaint. EEOC Charge at 2 ("After the [Title IX] complaint was closed, the retaliation started."). Indeed, the charge discusses sexual harassment only as the reason that she filed the Title IX complaint, and it lacks any description of harassing acts or indication that the harassment continued after she filed the Title IX complaint. EEOC Charge.

Armstrong's charge is not sufficient to exhaust her sexual harassment claim because its mere reference to the Title IX complaint was "not enough to exhaust, for Title VII purposes," the claims in the Title IX complaint. *See Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 222-23 (8th Cir. 1994). Merely mentioning sexual harassment in reference to her Title IX complaint does not exhaust her hostile work environment claim.

Although Armstrong argues that her hostile work environment claim is exhausted because the EEOC charge alleges that Allen made her uncomfortable by entering her office, Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J. 16, this argument is not supported by the record. This is true because the record clearly shows Armstrong's allegations regarding Allen entering her office were made in support of her retaliation claim and not as part of her hostile work environment claim. Armstrong identified Allen's entering her office as an act of retaliation in both her EEOC charge and her deposition. *See* Def.'s Reply Br. in Supp. of Mot. for Summ. J. 3; Armstrong Dep. 1 at 100. Armstrong's complaint and deposition testimony clearly place her retaliation claim after her hostile work environment claim. *See*

7

Am. Compl. ¶¶ 41-45, Doc. No. 7; Armstrong Dep. 1 at 98.  And in her deposition, Armstrong confirmed that she had described "every instance" of sexual harassment, having failed to identify Allen entering her office as sexual harassment at any point.  Armstrong Dep. 2 at 234.  There is no genuine dispute of material fact that the EEOC charge does not allege any facts providing notice of a sexual harassment claim.

    B.    <u>Retaliation</u>

Armstrong alleges that UALR retaliated against her after she filed the Title IX sexual harassment complaint against Allen.  To establish a prima facie case of retaliation, Armstrong must show that: (1) she engaged in protected conduct; (2) she suffered a materially adverse employment action; and (3) retaliation for the protected conduct is the "but for" cause of the adverse employment action. *See Jackman v. Fifth Jud. Dist. Dep't of Corr. Servs.*, 728 F.3d 800, 804 (8th Cir. 2013).  The parties do not dispute that the filing of a Title IX sexual harassment complaint is protected conduct.  UALR moves for summary judgment arguing that some of the adverse employment actions cited by Armstrong are time-barred, and that the others either do not qualify as materially adverse employment actions or were not taken in retaliation for Armstrong's protected conduct.

    *1. Limitations Period*

UALR first argues that some of the acts cited by Armstrong in support of her retaliation claim are time-barred under 42 U.S.C. § 2000e-5(e)(1)'s 180-day limitation period.  Unlike Armstrong's hostile work environment claim, "each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'"

*Liles v. C.S. McCrossan, Inc.*, 851 F.3d 810, 821 (8th Cir. 2017)(quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002)). Armstrong filed her EEOC charge on April 5, 2021. The following acts are time-barred because they occurred before October 7, 2020: (1) Allen emailing Armstrong a process for calling in sick; (2) Allen informing Armstrong that she would need to resume in-person work; (3) Allen assigning Armstrong responsibilities that she believed were not aligned with her position; and (4) Allen becoming agitated and angry with Armstrong about the garden report.

### 2. Materially Adverse Employment Actions

Summary judgment is granted on Armstrong's claims that Allen (1) regularly entered her office; (2) was overly critical of her work; and (3) was agitated and angry with her when she refused to train students on a particular task, because these actions were not materially adverse to Armstrong's employment. While these actions might have been unpleasant, they did not cause a materially significant disadvantage to Armstrong and appear to be the sort of "petty slights or minor annoyances that often take place at work." *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006). "[N]ot everything that makes an employee unhappy is an actionable adverse action." *Kelleher v. Wal-Mart Stores, Inc.*, 817 F.3d 624, 632 (8th Cir. 2016)(citation omitted). Moreover, "minor changes in duties or working conditions, even unpalatable or unwelcome ones, which cause no materially significant disadvantage, do not rise to the level of an adverse employment action." *Jackman*, 728 F.3d at 804. Finally, these actions are not the type of actions that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Lisdahl v. Mayo Found.* 633

F.3d 712, 720 (8th Cir. 2011)(quoting *Burlington*, 548 U.S. at 68).

### 3. *Causal link between Title IX complaint and retaliatory acts*

Summary judgment is granted on Armstrong's claims that her hours were reduced from thirty to twenty hours per week and that she was ultimately laid off. Although these are clearly materially adverse employment actions, the record does not show that they were taken in response to the Title IX complaint. The Title IX complaint was filed on July 14, 2020, while notice of the reduction of Armstrong's hours and the elimination of her position was given on November 19, 2020. Aff. of Lee ¶ 8; Armstrong Dep. 2 at 226.

Armstrong argues that there is a genuine dispute of material fact on her retaliation claim because an inference of retaliation can be drawn from the proximity between the filing of the Title IX complaint and these adverse acts. Armstrong's argument is understandable, but without any other evidence from which to infer retaliation, it is not sufficient to overcome UALR's motion for summary judgment because four months elapsed between the time that Armstrong filed her Title IX complaint and the time she was notified that her hours were being reduced and that her position was being eliminated. *See Peterson v. Scott Cnty.*, 406 F.3d 515 (8th Cir. 2005)("[M]ore than a temporal connection between the protected conduct and the adverse employment action is required to present a genuine factual issue on retaliation."); *E.E.O.C. v. Kohler Co.*, 335 F.3d 766, 774 (8th Cir. 2003)("The further in proximity the decision to terminate is from the protected activity, the less suspect the decision to terminate becomes."). "The inference [of retaliation] vanishes altogether when the time gap between the protected activity and the adverse employment action is measured

in months." *Tyler v. Univ. of Ark. Bd. of Trs.*, 628 F.3d 980, 986 (8th Cir. 2011).  Indeed, it has been held that a two-month gap between protected activity and the alleged retaliation so dilutes "any inference of causation that . . . as a matter of law [] the temporal connection could not justify a finding in [the plaintiff's] favor on the matter of causal link." *Kipp v. Mo. Highway & Transp. Comm'n,* 280 F.3d 893, 897 (8th Cir. 2002).

## IV.  CONCLUSION

For the foregoing reasons, UALR's motion for summary judgment [Doc. No. 15] is granted.

IT IS SO ORDERED this 29th day of August, 2023.

_____
UNITED STATES DISTRICT JUDGE